IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| COMMON CAUSE and GEORGIA STATE CONFERENCE OF THE NAACP, <br><br> PLAINTIFFS, <br><br><br>              v. <br><br><br> BRIAN KEMP, individually and in his official capacity as Secretary of State of the State of Georgia, <br><br><br> DEFENDANT. | CIVIL ACTION <br> NO. 2:16-CV-_____ <br><br> COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF <br><br> 52 U.S.C. § 20510 |

## COMPLAINT

This is an action against Brian Kemp, individually and in his official capacity as the Georgia Secretary of State. This action seeks declaratory and injunctive relief to prohibit Kemp from enforcing section 234 of the Georgia Election Code, O.C.G.A. § 21-2-234. By enforcing section 234 in conjunction with section 235, *id.* § 21-2-235, Kemp has removed hundreds of thousands of registered, qualified voters from Georgia's voter rolls based on their exercise of their right *not to vote*, in violation of the First Amendment to the United States Constitution. Removing voters for exercising their constitutionally protected right not to vote is also a violation of the National Voter Registration Act of 1993, 52

U.S.C. § 20501. That Act explicitly forbids removing voters "from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote." *Id.* § 20507(b)(2). This action also seeks injunctive relief ordering Kemp to reinstate the hundreds of thousands of Georgia voters who have been unlawfully removed for failure to vote during the last four years.

**Parties, Jurisdiction, and Venue**

1.

The plaintiffs in this action are Common Cause and Georgia State Conference of the NAACP.

2.

Common Cause is a nonprofit corporation organized and existing under the laws of the District of Columbia. It is one of the nation's leading democracy organizations and has over 400,000 members and chapters in thirty-five states, including over 6,500 members and supporters in Georgia. Since its founding in 1970, Common Cause has been dedicated to the promotion and protection of the democratic process, including the right of all citizens, including its eligible members, to vote in fair, open, and honest elections. Common Cause conducts significant nonpartisan voter-protection, advocacy, education, and outreach activities throughout the United States, including in Georgia, to ensure that voters

are registered to vote and have their ballots counted as cast. Common Cause is also a proponent of policies, practices, and legislation that facilitate registration and voting, including same-day voter registration, expanded early-voting periods, online voter registration, and automatic registration; and Common Cause is an opponent of efforts to burden registration and voting, including restrictive voter identification laws, partisan gerrymandering, and other efforts to suppress voter participation or dilute votes.

3.

Georgia State Conference of the NAACP is a nonprofit membership corporation with over 10,000 members and 127 chapters in counties throughout Georgia. One of Georgia NAACP's primary missions is the protection of the rights of African Americans and other minorities to vote and to participate in the democratic process. Georgia NAACP regularly conducts voter-registration drives and has brought numerous lawsuits to protect the rights of its members and other minorities to vote. *See, e.g.*, *Ga. State Conference of the NAACP v. Fayette Cty. Bd. of Comm'rs*, No. 3:11-CV-123-TCB, ___ F. Supp. 3d ___, 2015 WL 4633575 (N.D. Ga. Aug. 3, 2015); *Ga. State Conference of the NAACP v. Kemp*, 841 F. Supp. 2d 1320 (N.D. Ga. 2012). In addition to its voter-protection efforts, Georgia NAACP works to eliminate racial discrimination, to promote equality, and to

educate citizens, and it lobbies for legislation advancing those goals. Georgia NAACP's membership includes qualified, registered Georgia voters whose right to vote has been prejudiced, or is at risk of being prejudiced, by Kemp's enforcement of section 234.

4.

The defendant in this action is Brian Kemp, the Secretary of State of the State of Georgia. Kemp is named as a defendant both individually and in his official capacity. As the Secretary of State, Kemp is responsible for enforcing Georgia's unlawful procedure for removing voters for failure to vote under section 234. Kemp is the chair of the State Election Board, giving him the duty "[t]o maintain the official list of registered voters . . . and the list of inactive voters." O.C.G.A. §§ 21-2-30(d), -50(a)(14). Kemp is also the designated chief state election official, which imposes on him the responsibility to ensure that Georgia complies with the NVRA. *See id.* § 21-2-210 (designating the Secretary of State as the chief state election official); 52 U.S.C. § 20509 (requiring each State to designate a chief state election official, who is "responsible for coordination of State responsibilities" under the NVRA).

1405390.1

5.

This court has subject matter jurisdiction to grant both declaratory and injunctive relief against Kemp under 28 U.S.C. §§ 1331, 1343, 2201; 42 U.S.C. § 1983; and 52 U.S.C. § 20510(b)(2).

6.

Venue is proper in this court because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this district. *See* 28 U.S.C. § 1391(b)(2).

## Factual Allegations
### The Right Not to Vote

7.

The right of a qualified citizen to vote is a fundamental right protected by the First Amendment. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which . . . we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S. Ct. 526, 535 (1964).

8.

The First Amendment protects not only the right of a qualified citizen to vote. It also protects the right of a citizen *not to vote*. *Colon-Marrero v. Conty-Perez*, 703 F.3d 134, 145 (1st Cir. 2012) ("The right to vote is without question a

1405390.1

fundamental constitutional right guaranteed by the First Amendment of the Constitution. Conversely, *but equally important, the right to abstain from voting also constitutes political speech, and as such, is entitled to the highest of protections under the provisions of the First Amendment*." (emphasis added)). The Senate Committee Report supporting passage of the National Voter Registration Act confirmed that protecting this right not to vote motivated passage of the Act: "[W]hile voting is a right, people have an equal right not to vote, for whatever reason." S. REP. NO. 103-6, at 17 (1993) ("Senate Report").

## The National Voter Registration Act

9.

Congress passed the National Voter Registration Act of 1993 to "increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501(b)(1).

10.

Before the NVRA, states often removed (or purged) voters from the rolls for failing to vote, thereby denying them the right to vote in future elections unless they went through the often laborious process of re-registering. *See, e.g.*, Miss. Code Ann. § 23-15-159(1) (1990) (repealed 2000) ("[T]he commissioners of

election . . . may erase . . . the names of all persons who have not voted in at least one (1) election . . . in the last four (4) successive years.").

11.

An express purpose of the NVRA is to prohibit states from purging voters for failing to vote. This practice was condemned in the Senate Report, which recognized the right *not to vote* and the way states infringed that right:

> **[W]hile voting is a right, people have an equal right not to vote, for whatever reason**. However, many States continue to penalize such non-voters by removing their names from the voter registration rolls merely because they have failed to cast a ballot in a recent election[,] [even though] [s]uch citizens may not have moved or died or committed a felony. Their only "crime" was not to have voted in a recent election. . . . No other rights guaranteed to citizens are bound by the constant exercise of th[ose] right[s]. We do not lose our right to free speech because we do not speak out on every issue.

Senate Report at 17 (emphasis added) (internal quotation marks omitted).

12.

Section 8(b) of the NVRA effects this congressional purpose. That section prohibits voter-purge programs which "result in the removal of the name of any person from the official list of voters . . . *by reason of the person's failure to vote*." National Voter Registration Act of 1993, Pub L. No. 103-31, § 8(b)(2), 107 Stat. 77, 83 (codified as amended at 52 U.S.C. § 20507(b)(2)) (emphasis added).

13.

Section 8(b) does more than proscribe the final removal of voters for failure to vote. It also prohibits "[a]ny State program or activity . . . [which] *result[s] in* the removal of . . . voters . . . [for] failure to vote." 52 U.S.C. § 20507(b), (b)(2). In other words, a state violates the NVRA by engaging in "any activity that is *used to start, or has the effect of starting, a purge of voter rolls*" based even in part on failure to vote, "without regard to how [the activity] is described or to whether it also may have some other purpose." H.R. REP. NO. 103-9, at 15 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 105, 119 (1993) (emphasis added).

**Georgia's *Lawful* Procedures for Purging Voters**

14.

In 1994 the Georgia General Assembly enacted a "comprehensive revision" of the Georgia Election Code with the stated purpose of "conform[ing] to the National Voter Registration Act." *See* Elections–Comprehensive Revision to Conform to National Voter Registration Act of 1993, 1994 Ga. Laws 1443.

15.

Under the Election Code, the Secretary of State (*i.e.*, Kemp) must maintain an official list of registered voters. O.C.G.A. § 21-2-211(a). The Secretary of State must purge from that official list people who are no longer qualified to vote for

several unobjectionable reasons: death, *id.* § 21-2-231(e); felony conviction, *id.* §21-2-231(a); incompetency adjudication, *id.* § 21-2-2-231(b); or registration to vote in another jurisdiction, *id.* § 21-2-232. These reasons for purging voters are unobjectionable because they are expressly permitted by the NVRA. *See* 52 U.S.C. § 20507(a).

16.

Beyond permitting purges of voters for these unobjectionable reasons, the NVRA also permits a State to purge voters when they move out of their jurisdiction. *See* 52 U.S.C. § 20507(c). But, importantly, the NVRA contemplates purging voters who have moved based on "*change-of-address information supplied by the Postal Service*." *Id.* § 20507(c)(1)(A) (emphasis added); *see also id.* § 20507(c)(1)(B) (permitting a purge for moving "if it appears *from information provided by the Postal Service that* . . . (ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction" (emphasis added)).

17.

Section 233 of the Georgia Election Code permits—but does not require— Kemp to purge voters who have moved out of their jurisdiction by comparing the official list of voters to the U.S. Postal Service's change-of-address database, as contemplated by the NVRA. *See* O.C.G.A. § 21-2-233; *see also* 52 U.S.C.

§ 20507(c). Under section 233, Kemp may (but, again, is not required to) send notices to voters who the Postal Service database suggests have moved, asking such voters to confirm their addresses. O.C.G.A. § 21-2-233(c). If a voter fails to respond to this notice within 30 days, Kemp transfers that voter to a list of "inactive" voters. *Id.*; *see also id.* § 21-2-235 (providing for the "inactive list"). Once a voter is placed on the "inactive list," if he or she does not vote in two consecutive general elections, Kemp must purge the voter. *Id.* § 21-2-235(b). After being purged, a voter cannot vote in Georgia without re-registering. *See id.* §§ 21-2-211, -235.

18.

This section 233 procedure, by which Kemp purges voters who have moved *according to change-of-address information supplied by the U.S. Postal Service*, is expressly authorized by the NVRA. *See* 52 U.S.C. § 20507(c). Plaintiffs are not challenging this section or its purge procedure.

### Georgia's *Unlawful* Procedure for Purging Voters for Failing to Vote

19.

Plaintiffs *are* challenging the validity and enforcement of a *separate* purge procedure under a *separate* section of the Georgia Election Code, O.C.G.A. § 21-2-234. Section 234, unlike the section 233 purge procedure described immediately

above, is not only *not authorized* by the NVRA, it is *expressly prohibited* by the NVRA. Section 8(b)(2) of the NVRA prohibits states from purging voters "***by reason of the person's failure to vote***." 52 U.S.C. § 20507(b)(2) (emphasis added). That is precisely the effect of section 234 and Kemp's enforcement thereof.

20.

Under section 234, in each odd-numbered year Kemp *must compile* a list of registered voters who have not voted (or had other "contact" with the election system) in the three prior calendar years. O.C.G.A. § 21-2-234(a)(2). Kemp *must send* these voters notices demanding that they confirm their addresses. *Id.* Then, Kemp *must transfer* to the inactive list any voter who does not respond to this notice within 30 days. *Id.* § 21-2-234(g). Finally, Kemp *must purge* any inactive voter who fails to vote in the next two general elections. *Id.* § 21-2-235(b).

21.

Under the section 234 procedure, a qualified, registered Georgia voter may be purged from the voter rolls for failing to vote. If he does not vote in three consecutive years and fails to respond to an address-confirmation notice, he will be moved to the inactive list. Then, if he does not vote in two consecutive general elections, he will be purged altogether.

22.

Under the section 234 procedure, Kemp initiates the process for purging voters based solely on their failure to have voted in the three previous calendar years. Unlike the section 233 procedure, under section 234 Kemp purges voters despite having no information from the U.S. Postal Service (or otherwise) that the voters have, in fact, moved out of the jurisdiction. This purge process is triggered solely by an individual's failure to have voted in previous elections—a practice which the NVRA specifically prohibits.

23.

In sum, under the Georgia Election Code Kemp must maintain a list of "inactive" voters. O.C.G.A. § 21-2-235(a). Voters on the inactive list are purged if they do not vote for two consecutive general elections. *Id.* § 21-2-235(b). Voters are placed on the inactive list if, as relevant here, they fail to respond within 30 days to address-confirmation notices sent by Kemp. There are two ways for a voter to receive an address-confirmation notice: *first*, Kemp *may send* notices to voters who have moved according to the U.S. Postal Service change-of-address database, *see id.* § 21-2-233; and *second*, Kemp *must send* address-confirmation notices to voters who have not voted or otherwise made contact for three calendar years, *see id.* § 21-2-234. This *second* procedure, under section 234, violates the NVRA

1405390.1

because it targets voters for removal and begins a purge process based on those

voters' failure to vote.

24.

Section 234 provides in pertinent part:

(a)(2) In the first six months of each odd-numbered year, the Secretary of State shall identify all electors whose names appear on the list of electors with whom there has been no contact during the preceding three calendar years and who were not identified as changing addresses under [section 233].

* * *

(c) * * *

(1) If the elector has not changed addresses or has changed addresses within the county or municipality in which the elector is currently registered, the elector must return the [notice] with the updated information, if any, within 30 days after the date of the notice; and

(2) If the card is not returned within 30 days after the date of the notice, the elector's name shall be transferred to the inactive list of electors provided for in Code Section 21-2-235.

O.C.G.A. § 21-2-234.

25.

Ironically, section 233—which is permitted by the NVRA—is *permissive*,

whereas section 234—which violates the NVRA—is *mandatory*. *Compare*

O.C.G.A. § 21-2-233(a) ("The Secretary of State is authorized to cause ***at his or***

***her discretion*** the official list of electors to be compared to the change of address

information supplied by the United States Postal Service . . . for the purpose of identifying those electors whose addresses have changed." (emphasis added)), *with id.* § 21-2-234(a)(2) ("[T]he Secretary of State ***shall identify*** all electors . . . with whom there has been no contact during the preceding three calendar years . . . ." (emphasis added)).

26.

The effect of section 234 is to target people for removal from the official list of registered voters in Georgia based solely on their exercise of their constitutional right not to vote for three calendar years, in violation of the First Amendment to the United States Constitution and section 8(b) of the NVRA.

**Kemp and his Predecessors Enforce § 234 Despite
Protest by the U.S. Department of Justice**

27.

On October 24, 1994, Deval Patrick, then the U.S. Assistant Attorney General for the U.S. Department of Justice Civil Rights Division, wrote a letter to Dennis Dunn, an Assistant Attorney General for the State of Georgia, stating that section 234 violated the NVRA:

> [W]ith respect to the procedures . . . [in section 234] for removing registered voters from the registration list [that] provide for sending a registration confirmation notice to persons who have not voted or otherwise had "contact" during a three-year period . . . we note that the NVRA specifically provides with respect to such voter removal

procedures that the procedures "shall not result in the removal of names of any person from the official list of voters registered to vote in an election for federal office by reason of the person's failure to vote."

**Under the proposed procedures, registered voters in Georgia who fail to vote (or otherwise have 'contact' with the election administration system) during a three-year period would be specifically targeted to be included in the state's purge procedures. This result is directly contrary to the language and purpose of the NVRA . . . .**

Letter from Deval L. Patrick to Dennis R. Dunn, October 24, 1994 (emphasis added). A true and correct copy of this letter is attached as Exhibit 1 and incorporated by reference.

28.

The State of Georgia ignored the warning from the Department of Justice and began implementing section 234 in 1997. *See* 1994 Ga. Laws 1481.

29.

Since 1997, Kemp and his predecessor Secretaries of State have enforced section 234, unlawfully purging hundreds of thousands of registered Georgia voters for not voting, in violation of the NVRA and the First Amendment. Indeed, Kemp has indicated that he will continue to enforce section 234. *See* Letter from C. Correia to E. Bondurant, Dec. 23, 2015 (Exhibit 2).

**Plaintiffs Have Been Injured by**
**Kemp's Unlawful Enforcement of § 234**

30.

Plaintiffs, including Common Cause and Georgia NAACP and their members, have been and continue to be injured by Kemp's enforcement of section 234.

31.

Kemp's unlawful purges under section 234 have nullified the efforts of Common Cause and Georgia NAACP to increase the number of registered voters in Georgia. These unlawful purges have diminished the time and resources devoted by Common Cause and Georgia NAACP to voter-registration and voter-protection efforts in two ways: (1) voters that Common Cause and Georgia NAACP urged to register, whether directly through voter registration drives in the case of Georgia NAACP, or through nonpartisan voter-protection and registration-related advocacy and outreach in the case of Common Cause, have been unlawfully purged under section 234, thus nullifying those voter-registration efforts; and (2) Common Cause and Georgia NAACP have been forced to divert their already limited resources to investigate and take measures to counteract Kemp's unlawful purges.

32.

Kemp's unlawful purges under section 234 have forced Common Cause and Georgia NAACP to divert resources. Common Cause and Georgia NAACP have been forced to spend time, money, and other resources urging voters to register who (1) are later unlawfully purged and (2) were once registered but have been purged. If Common Cause and Georgia NAACP did not have to spend resources in this way, they would have spent those resources on other activities, such as voter education, election-day mobilization, lobbying, and preventing discrimination. Common Cause and Georgia NAACP reasonably anticipate, based on Kemp's longtime and continuing violations of the NVRA and the First Amendment, that the diversion of these resources will continue absent a remedy by this Court.

33.

According to statistics provided by the State of Georgia to the United States Election Assistance Commission, Kemp purged 372,242 voters "due to failure to vote" during the two-year period from October 2012 to November 2014. *See* U.S. Election Assistance Commission Report to the 114th Congress: *The 2014 EAC Election Administration and Voting Survey Comprehensive Report* 106 (June 30, 2015) (EAC Report). Relevant excerpts from the EAC Report are attached as Exhibit 3 and incorporated by reference. The full report may be viewed at

1405390.1

http://www.eac.gov/assets/1/Page/2014_EAC_EAVS_Comprehensive_Report_508_Compliant.pdf.

34.

Kemp's purge of those 372,242 voters for "failure to vote" exceeded the *total number of new registrants* in Georgia during the same two-year period. *See* EAC Report at 98 (Ex. 3 at 2) (indicating that Georgia added 364,382 new registrants to its voter rolls between October 2012 and November 2014).

35.

Georgia NAACP also has been injured in its capacity as an association of its individual members. Individual Georgia NAACP members have been unlawfully purged by Kemp under section 234. Registering its members to vote and ensuring that they are able to vote on election day are core purposes of Georgia NAACP.

36.

Plaintiffs have given Kemp 90 days' written notice that the section 234 purge procedure violates the NVRA and the First Amendment by purging voters for exercising their right not to vote. *See* 52 U.S.C. § 20510(b)(2) (requiring 90 days' pre-suit notice). The violation has not been corrected. *See id.* True and correct copies of Plaintiffs' pre-suit notice and Kemp's response are attached as Exhibits 4 and 2 and incorporated by reference.

**Continued Enforcement of § 234**
**Will Cause Irreparable Harm to Plaintiffs**

37.

Plaintiffs, including Common Cause and Georgia NAACP and their members, have been and will continue to be irreparably harmed by Kemp's enforcement of section 234.

38.

The registration deadline for voting in the 2016 presidential primary has *already passed*. *See* O.C.G.A. § 21-2-224(a) (registration deadline for the March 1, 2016, primary passed on February 1). Voters unlawfully purged under section 234 cannot vote in the 2016 presidential primary without an injunction from this Court adding them back to the voter rolls. Other registration deadlines loom: the deadline to register for the November 2016 general election is October 11, 2016—just 8 months from now.

39.

Without an injunction from this Court, Common Cause and Georgia NAACP will be forced to expend significant resources urging voters who have been unlawfully purged by Kemp to re-register so that they can vote in the 2016 elections. Given the impending registration deadlines, Common Cause and Georgia NAACP are already expending resources on voter protection and voter

1405390.1

registration-related advocacy, education, outreach to reduce voter confusion and re-register the unlawfully purged voters, and must continue immediately to expend resources doing so. By expending these resources to re-register unlawfully purged voters, Common Cause and Georgia NAACP will necessarily divert resources from their other activities, such as voter education, election-day mobilization, lobbying, and preventing discrimination.

40.

The individual members of Georgia NAACP have also been irreparably harmed by being purged for failing to vote. Georgia NAACP members have been, and risk being, transferred to the inactive list. They also have been, and risk being, purged from the inactive list for failing to vote. Georgia NAACP members who have been unlawfully purged cannot vote in the 2016 presidential primary absent injunctive relief from this Court. "The loss of First Amendment freedoms, for even minimal periods of time, *unquestionably constitutes irreparable injury*." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976) (emphasis added).

**Count I: Violation of the First Amendment Right Not to Vote**

41.

By enforcing O.C.G.A. § 21-2-234, Kemp has violated and continues to violate registered, qualified Georgia voters' right not to vote, which is secured by the First Amendment to the United States Constitution.

42.

Plaintiffs have been aggrieved by Kemp's past and ongoing violations of the First Amendment and have no adequate remedy at law. Declaratory and injunctive relief are appropriate to remedy Kemp's violations of the First Amendment and to prevent Kemp from continuing to violate the First Amendment.

**Count II: Violation of the National Voter Registration Act**

43.

By enforcing O.C.G.A. § 21-2-234, Kemp has violated and continues to violate the requirements of section 8(b) of the National Voter Registration Act, 52 U.S.C. § 20507(b).

44.

Plaintiffs have been aggrieved by Kemp's past and ongoing violations of the NVRA and have no adequate remedy at law. Declaratory and injunctive relief are

appropriate to remedy Kemp's violations of the NVRA and to prevent Kemp from continuing to violate the NVRA.

### Prayer for Relief

Wherefore, Plaintiffs respectfully pray:

45.

That the court enter a declaratory judgment under 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2) declaring that O.C.G.A. § 21-2-234 is void because it (1) penalizes voters for exercising their constitutional right not to vote, in violation of the First Amendment to the United States Constitution, U.S. CONST. amend. I; and (2) conflicts with the NVRA, 52 U.S.C. § 20507, in violation of the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, § 2.

46.

That the court enter a declaratory judgment under 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2) declaring that, by enforcing O.C.G.A. § 21-2-234 and purging voters for exercising their constitutional right not to vote, Kemp has violated (1) the First Amendment to the United States Constitution, U.S. CONST. amend. I; and (2) the NVRA, 52 U.S.C. § 20507.

47.

That the Court enter preliminary and permanent injunctions prohibiting Kemp from transferring voters to the inactive list under the authority of O.C.G.A. § 21-2-234.

48.

That the Court enter preliminary and permanent injunctions prohibiting Kemp from purging any voter who was placed on the inactive list under the authority of O.C.G.A. § 21-2-234.

49.

That the Court order Kemp to: (1) restore to the official list of voters all voters who have been transferred to the inactive list under O.C.G.A. § 21-2-234; (2) restore to the official list of voters all voters who have been purged after being placed on the inactive list under O.C.G.A. § 21-2-234; (3) notify all voters restored under (1) and (2) that they have been restored to the official list and are registered to vote in all upcoming elections; and (4) cease interfering, under the authority of O.C.G.A. § 21-2-234, with the rights of Georgia voters to vote or maintain their registration.

1405390.1

50.

That the Court award Plaintiffs their reasonable attorney's fees and expenses and costs of litigation. *See* 52 U.S.C. § 20510(c); 42 U.S.C. § 1988.

51.

That the Court retain jurisdiction over this action to ensure that Kemp and his successors continue to comply with their obligations under the First Amendment and the NVRA.

52.

That the Court grant Plaintiffs such other relief, both legal and equitable, as the Court may deem just and proper.

Respectfully submitted this 10th day of February, 2016.

*/s/ Emmet J. Bondurant*
Emmet J. Bondurant
Georgia Bar No. 066900
bondurant@bmelaw.com
Jason J. Carter
Georgia Bar No. 141669
carter@bmelaw.com
Chad K. Lennon
Georgia Bar No. 408953
lennon@bmelaw.com

**BONDURANT MIXSON & ELMORE LLP**
3900 One Atlantic Center                                        *Counsel for Plaintiffs*
1201 West Peachtree Street NW
Atlanta, Georgia  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

1405390.1