IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COMMON CAUSE and GEORGIA STATE CONFERENCE OF THE NAACP, | * * * * | |
| Plaintiffs, | * * | Civil Action No. 1:16CV00452-TCB |
| v. | * * | |
| BRIAN KEMP, individually and in his official capacity as Secretary of State of the State of Georgia, | * * * * | |
| Defendant. | * * | |

**DEFENDANT KEMP'S REPLY BRIEF
IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs have filed a response to Defendant's motion to dismiss asserting five (5) reasons why Defendant's motion to dismiss should be denied. Doc. 17 at 4-5, and 9. Each of these asserted reasons relies on an erroneous interpretation of the NVRA and Plaintiffs' complete refusal to acknowledge Congress' 2002 enactment of the Help America Vote Act (HAVA), and amendment of the NVRA. Nowhere in Plaintiffs' 25 page brief do they explain, or even acknowledge, the 2002 amendment to the NVRA.

1

**I.      Plaintiffs' Interpretation of Sec. 8(b) of the NVRA is Contrary to the 2002 Amendment to the NVRA and Contrary to HAVA.**

Plaintiffs continue to simply ignore the language of the 2002 amendment to Sec 8(b) of the NVRA, which now *expressly authorizes* removal of voters from registration lists if they fail to respond to a confirmation postcard *and* they fail to vote *or appear to vote*[1] in two subsequent elections. Sec. 8(b) now provides, with the 2002 amendment in italics:

> (b) Confirmation of voter registration. Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office--
>      (1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq. [now 52 U.S.C. §§ 10301 et seq.]); and
>      (2) shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote, *except that nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsections (c) and (d) to remove an individual from the official list of eligible voters if the individual—*
>      *(A) has not either notified the applicable registrar (in person or in writing) or responded during the period described in subparagraph (B) to the notice sent by the applicable registrar; and then*
>    *(B) has not voted or appeared to vote in 2 or more consecutive general elections for Federal office.*[2]

52 USCS § 20507(b) (emphasis added).

---

[1] Like the Georgia statute, the NVRA does not require anyone to vote, but voters must *appear* to confirm their continued registration. *See* 52 U.S.C. § 20507(b)(2).
[2] All of the italicized language was added in the 2002 Amendment. Sec. 903, Pub. L. No. 107-252, 116 Stat. 1728, codified at 52 U.S.C. § 20507(b).

Pursuant to HAVA, States are specifically required to maintain:

> A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters. Under such system, consistent with the National Voter Registration Act of 1993 (42 U.S.C. § 1973gg et seq.) [currently codified at 52 U.S.C. § 20501], registrants who have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office *shall* be removed from the official list of eligible voters, except that no registrant may be removed *solely* by reason of a failure to vote.

52 U.S.C. § 21083(a)(4)(A) (emphasis added). Given the mandate in HAVA that voters who do not return the confirmation postcard and do not appear to vote for two (2) additional federal elections, be removed from voter registration lists, it is incredible to suggest that Georgia violates the NVRA by doing precisely what HAVA requires. O.C.G.A. § 21-2-234 is consistent with both the NVRA and HAVA. Voters are never removed from the list of eligible voters "solely by reason of a failure to vote." 52 U.S.C. § 21083(a)(4)(A). Rather, voters are removed when they have failed to return a confirmation postcard *and* have had no contact – voting or otherwise – with election officials for four (4) federal election cycles. This is a procedure expressly authorized by the HAVA amendment.

As noted in Defendant's initial brief, the 2002 amendment to the NVRA was enacted as part of HAVA. In short, by adopting HAVA, and amending the NVRA, Congress effectively rejected Plaintiffs' interpretation of the law. Though the

3

NVRA and HAVA prohibit removing a voter *solely* for failure to vote, both statutes make it absolutely clear that failure to vote—or, in this case failure to have any contact for three (3) years—coupled with not responding to the confirmation postcard and then not appearing to vote through two more federal election cycles is an acceptable method of mandatory list maintenance. If Plaintiffs' interpretation of the statute were correct, HAVA's 2002 amendment to the NVRA was either meaningless or completely superfluous. Indeed, Plaintiffs continue to quote Sec. 8(b) as if there was no amendment. *See* Doc. 17 at 2, 6 quoting Sec. 8(b) *without* any reference to the language added in 2002. That amendment however, must be given meaning. "It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word." *United States v. Esquenazi*, 752 F.3d 912, 922 (11th Cir. 2014) (citing *Regions Hosp. v. Shalala*, 522 U.S. 448, 467 (1998)).

Georgia's statutory procedures are in strict compliance with Sec. 8(b) of the NVRA, as amended by HAVA. A confirmation postcard is sent to voters who have not had any contact with election officials in three (3) years, including two (2) federal election cycles.[3] The voter is required only to *confirm* his or her

---

[3] Plaintiffs erroneously state that confirmation postcards are sent to voters prior to passage of an entire Presidential election cycle. Doc. 17 at 18. Plaintiffs misunderstand the state election structure. As Defendant set out in the initial brief,

registration by (1) returning the postcard, including any changes to residency; (2) otherwise "appearing" to vote sometime during the next two federal election cycles; or (3) having any other contact including signing a petition. No one is removed from Georgia's voter registration lists simply for not voting. Rather they are moved to inactive status because they have failed to respond to the notice from the registrar and have had no other contact, voting or otherwise, with election officials through two federal election cycles. O.C.G.A. § 21-2-234(c)(2) makes clear, voters are only moved to inactive status *if* they do not return the confirmation postcard. Voters on the inactive list are eligible to vote, and consistent with the NVRA, these voters remain on the inactive list for two more federal election cycles. O.C.G.A. § 21-2-235(b). Any contact with election officials, confirming the voter's address, during that time period is sufficient to move the voter from inactive status back to active status.[4] O.C.G.A. § 21-2-235(d).

---

because the list maintenance process is only begun in odd numbered years, a postcard is only ever sent to voters who have not had any contact for more than two (2) federal election cycles, including one Presidential election. *See* Doc. 10-1 at 8 n. 4.

[4] "No contact" means:
> that the elector has not filed an updated voter registration card, has not filed a change of name or address, has not signed a petition which is required by law to be verified by the election superintendent of a county or municipality or the Secretary of State, has not signed a voter's certificate, and has not confirmed the elector's continuation at the same address during the preceding three calendar years.

Plaintiffs allege that O.C.G.A. § 21-2-234 "targets" eligible voters because O.C.G.A. § 21-2-231 through § 21-2-233 address some of the ways in which persons who are convicted of felonies, identified as non-citizens, declared mentally incompetent, deceased, or who have changed residence, are removed from Georgia's voter registration lists. Doc. 17 at 7-8.  However, nothing in O.C.G.A. § 21-2-231 through § 21-2-233 purports to be exhaustive.  Nor, does anything in the NVRA suggest that States can only address removing ineligible voters from their lists by one mechanism.  There is no impermissible "targeting" of eligible voters, rather O.C.G.A. § 21-2-234 is part of the structure by which Georgia seeks to comply with the NVRA's mandate to "make[] a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant . . . ." Section 8(a)(4). Nothing in the NVRA prohibits the use of the confirmation postcard as a means of investigating the current residency of voters who have had no contact with the election process in over three (3) years, or two (2) federal election cycles.[5]

---

O.C.G.A. § 21-2-234(a)(1).

[5] Plaintiffs claim that confirmation postcards are only sent to "eligible" voters who have not changed residences.  Doc. 17 at 13.  However, that argument assumes that everyone who changes their residence submits a Notice of Change of Address (NCOA) form to the U.S. Postal Service.  There simply is no basis for that assumption, and Congress recognized as much when enacting HAVA and amending the NVRA. Congress recognized that we live in a very mobile society,

O.C.G.A. § 21-2-234 simply seeks to confirm the address of voters that have not had any contact with election officials in over two (2) federal election cycles. Nothing in the NVRA prohibits such an inquiry.

Plaintiffs' suggestion that O.C.G.A. § 21-2-234 is not "uniform" because confirmation notices are sent only to voters who have not had any contact for three years, rather than to every voter in Georgia, is unfounded.  Doc. 17 at 18.  First, uniformity requires objective criteria, not that every voter be sent a postcard. Second, sending every voter in Georgia a confirmation postcard would unduly burden State coffers and inevitably lead to more names—not less—being removed from voter registration lists.  Under Plaintiffs' uniformity requirement, voters who had just confirmed their residence, by appearing to vote in an election or otherwise

---

and they charged the States with responsibility for developing a system to maintain the integrity of voter registration lists including a system designed to remove voters who have changed residence, *whether or not* those individuals submit an NCOA form.  Indeed, the very fact that Congress made utilizing the NCOA database an optional method shows that Congress intended to give states the opportunity to craft their own method of determining whether voters have changed addresses. This is precisely the type of choice regarding list maintenance that HAVA expressly gives to the states. 52 U.S.C. § 21085 ("The specific choices on the methods of complying with the requirements of [Title III, i.e., 52 U.S.C. §§ 21081-21084] shall be left to the discretion of the State.").

confirming their residence with election officials, would still get a postcard. Congress imposed no such requirement on the States.[6]

## II. Plaintiffs' Reading of Sec. 8(b) of the NVRA is Inconsistent with the Statutory Framework of Sec. 8(d) of the Statute.

As noted, Plaintiffs argue that Sec. 8(b) of the NVRA prohibits States from sending confirmation post cards to anyone other than those voters about whom the State has already learned of an address change from the U.S. Postal Service. Doc. 17 at 6-7. Plaintiffs contend that sending a confirmation postcard to voters simply because they have had *no contact* with election officials targets *eligible* voters for removal from the voter registration lists and violates the NVRA. *Id.*

Plaintiff's interpretation of Sec. 8(b), as prohibiting sending confirmation postcards to anyone other than voters who have filed change of address notices with the U.S. Postal Service, is refuted by the plain language and statutory framework of Sec. 8(d)(2)(A) and 8(d)(3). Those sections of the NVRA set out in detail what a voter *who has not changed his or her address* must do *after receiving a confirmation postcard* to remain on the registration rolls and also describes the duties of registrars in making corrections to voter registration lists pursuant to the

---

[6] Similarly, Congress imposed no requirement that States assume the financial burden of mailing all voters a "general mailing" as a mechanism for getting information about changes of residency. *See* Doc. 17 at 17. Neither the NVRA nor HAVA impose such a requirement.

information collected from the confirmation postcards.  If Plaintiffs were correct, and State officials were prohibited from sending the confirmation postcard to anyone who has not already notified the U.S. Postal Service of a change of address, there would be no need to describe in detail what a voter who has *not moved* must do when they receive a confirmation postcard.  In other words, the statute *contemplates* that some of the voters receiving confirmation postcards will still be residing at the address shown on their voter registration records.  It provides that if the postcard is *not* returned "affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote." 52 U.S.C. § 20507(d)(2)(A).  These procedures would never be necessary under Plaintiffs' interpretation of the NVRA.  Nothing in the NVRA prohibits states from using the confirmation postcard as a means to obtain current and accurate information regarding voters who have not had any contact with election officials in three (3) years, including two (2) federal election cycles.

**III.   The Safe Harbor Provision is an Optional Method of File Maintenance.**

Plaintiffs interpret Sec. 8(c)(1) of the NVRA, 52 U.S.C. § 20507(c)(1), to *require* that States utilize the U.S. Postal Service change of address information or a similar system.  The statute is clear, however, that the particular voter removal program outlined in Sec. 8(c)(1) is optional.  Nothing in Sec. 8(c) limits the type of

list maintenance program a State may use pursuant to its obligations under Sec. 8(a)(4). Rather, the only limitations on list maintenance programs are those contained in Sec. 8(b), quoted on page 2 above. Plaintiffs both ignore the statutory language above, and insert non-existent requirements into the NVRA. Moreover, as set out in Defendant's initial brief, HAVA expressly provides that "[t]he specific choices on the methods of complying with the requirements of [Title III, i.e., 52 U.S.C. §§ 21081-21084] shall be left to the discretion of the State." 52 U.S.C. § 21085. In other words, federal law requires States to adopt a list maintenance plan, but authorizes States to design their own plans, consistent with HAVA and the NVRA.

**IV. The Department of Justice's 1994 Objection has no Relevance as to Whether Current Georgia Law Violates the Current Language of the NVRA.**

As Defendant set out in his opening brief, Plaintiffs in their complaint assigned some meaning to the fact that the DOJ did not preclear Georgia's original (1994) attempt to comply with the NVRA's list maintenance requirement. Plaintiffs ignore the fact that in 1997 Georgia amended its statute and that statute was precleared. Plaintiffs in their response raise a non-issue—that preclearance meant only that the change did not violate Sec. 5 of the NVRA. That is true of any preclearance, and Defendant did not and would not contend otherwise. But

Plaintiffs go further—they argue that the original objection means that the DOJ believes Georgia is violating the NVRA. In making that argument, Plaintiffs fail to account for the reality that Georgia amended its statute in 1997 and that, subsequent to DOJ's initial objection, Congress amended the NVRA as discussed above.[7] Under these circumstances, Plaintiffs' suggestion that the Department of Justice's 1994 objection is a reflection of the Department's interpretation of the amended Georgia statute or the NVRA as amended by HAVA in 2002, is without merit. Plaintiffs cannot identify a single case where the Department of Justice has sued, under its enforcement powers, to enforce the NVRA in a manner consistent with Plaintiffs' interpretation of the statute.

Moreover, where, as here, the language of the statute is clear, an administrative agency's interpretation is owed no deference. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency,

---

[7] Plaintiffs suggest that there was no real difference between the 1994 and 1997 Georgia statutes. Doc. 17 at 21. Plaintiffs' comparison ignores the change in the definition of "no contact" contained in O.C.G.A. § 21-2-234(a)(1). The definition was amended to delete "has not voted in any election," from the definition. Plaintiffs contend that "signing a voter's certificate," which is one of the ways in which a voter can have a contact with election officials, "is the functional equivalent of voting." Doc. 17 at 19. While voters do sign a voter certificate whenever they vote, the importance of the voter certificate is that voters must *confirm their address* on the voter certificate. *See* O.C.G.A. § 21-2-402. While Plaintiffs contend there was no significant difference between the 1994 and 1997 statutes, the Department of Justice disagreed.

must give effect to the unambiguously expressed intent of Congress." *Animal Legal Def. Fund v. United States Dep't of Agric.*, 789 F.3d 1206, 1215 (11th Cir. 2015) (quoting *Chevron, U.S.A., Inc. v. NRDC, Inc.* 467 U.S. 837, 842-43 (1984)). Here, the NVRA's statutory language is clear.

## V.     Plaintiffs have Failed to State a First Amendment Claim.

Plaintiffs cite *Hoffman v. Maryland*, 928 F.2d 646, 648 (4th Cir. 1991) in support of their alleged First Amendment right "to be registered without voting." Doc. 17 at 22.  However, *Hoffman* never establishes such a right.  Rather, the Fourth Circuit, without deciding whether such a right exists, concluded that purge laws do *not* violate any such First Amendment right.  928 F.2d at 648.  Moreover, as set out in Defendant's initial brief, Georgia law does not require anyone to vote in order to remain on the registration rolls.  Rather, voters must simply *confirm,* either through a confirmation postcard or by some other contact with election officials, their registration once every four (4) federal election cycles.  Plaintiffs have not identified any federal constitutional right to remain on a voter registration list, not vote, *and* not confirm their address once every four (4) federal election cycles.  Indeed, Plaintiffs have failed to identify a single voter who both desires to remain registered to vote *and* not vote—or otherwise have contact with election officials—for more than four (4) federal election cycles. For all of the reasons

stated in Defendant's initial brief, Doc. 10-1 at 17-23, Plaintiffs' First Amendment challenge fails.

## VI. Plaintiffs' Claims for Equitable Relief Against Secretary Kemp, in his Individual Capacity, Should be Dismissed.

As set out in Defendant's initial brief, claims for injunctive relief may be brought against government officials only in their official capacity. *Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 n. 9 (11th Cir. 1995) (explaining that "claims for injunctive or declaratory relief . . . are considered to be official capacity claims against the relevant governmental entity."); *See also Santhuff v. Seitz*, 385 Fed. Appx. 939, 642 n. 9 (11th Cir. 2010) (affirming dismissal of claims for injunctive relief where Defendant was only sued in his individual capacity). Plaintiffs argue they have properly sued Secretary Kemp in his individual capacity, relying on cases that establish only that a state official, sued in his *official* capacity, is not *immune* from suit for prospective injunctive relief. Doc. 17 n. 6 (citing *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1288 (11th Cir. 2015)). That is not the issue. The ability to sue Defendant in his official capacity for injunctive relief does not mean that Defendant may be sued in his individual capacity. Plaintiffs have not cited a single case where a state official was sued in their *individual* capacity for injunctive

relief.  Plaintiffs' claims against Secretary Kemp in his individual capacity are improper and should be dismissed.

## CONCLUSION

For the foregoing reasons, Secretary Kemp prays that Plaintiffs' complaint be dismissed in its entirety.

Respectfully submitted,

SAMUEL S. OLENS        551540
Attorney General

DENNIS R. DUNN         234098
Deputy Attorney General

RUSSELL D. WILLARD  760280
Senior Assistant Attorney General
rwillard@law.ga.gov

/s/Julia B. Anderson
JULIA B. ANDERSON      017560
Senior Assistant Attorney General
janderson@law.ga.gov

/s/Cristina Correia
CRISTINA CORREIA       188620
Assistant Attorney General
ccorreia@law.ga.gov

/s/Josiah Heidt
JOSIAH HEIDT           104183
Assistant Attorney General
jheidt@law.ga.gov

Please address all
Communication to:
CRISTINA CORREIA
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
(404) 656-7063
Fax:  404-651-9325

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing Defendant's Brief in Support of Motion to Dismiss was prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

## Certificate of Service

I hereby certify that on April 5th, 2016, I electronically filed Defendant Brian Kemp's Reply Brief in Support of Motion to Dismiss using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

>Emmet J. Bondurant, II
>Jason J. Carter
>Chad Lennon
>Bondurant Mixson & Elmore, LLP
>1201 West Peachtree Street, N.W.
>3900 One Atlantic Center
>Atlanta , GA  30309-3417

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  NONE

This 5th day of April, 2016.

>/s/Josiah Heidt
>JOSIAH HEIDT           104183
>Assistant Attorney General